UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RON TOLKIN,

       Appellant,

   -against-

MARC A. PERGAMENT, Chapter 7 Trustee
of the Estate of Marc B. Tolkin; MARC B.
TOLKIN; DEPARTMENT OF TREASURY,
Internal Revenue Service; NEW YORK STATE
DEPARTMENT OF TAXATION, Bankruptcy
Unit Special Procedures, and LONG ISLAND
FEDERAL COURTHOUSE, U.S. Trustees Office,

       Appellee.
-----------------------------------------------------------X

**ORDER**
11 CV 3467(SJF)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ MAR 3 1 2012 ★

LONG ISLAND OFFICE

FEUERSTEIN, J.,

I. Introduction

On June 16, 2011, *pro se* appellant Ron Tolkin ("appellant") filed in the United States Bankruptcy Court for the Eastern District of New York ("the bankruptcy court") a notice of appeal to this Court from an order of the bankruptcy court (Grossman, U.S.B.J.), entered June 13, 2011, denying his motion, *inter alia*, to dismiss an adversary proceeding commenced against him and another in the bankruptcy court on July 13, 2009 by appellee Marc A. Pergament ("the Trustee"), as Chapter 7 Trustee of the Estate of Marc B. Tolkin. The notice of appeal was transmitted to this Court on July 19, 2011. For the reasons set forth below, the order of the bankruptcy court is affirmed.

1

II.     Background

On or about October 1, 2007, appellant loaned his son, debtor Marc B. Tolkin ("the debtor"), seventy thousand dollars ($70,000.00).

On or about October 15, 2007, the debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code ("the Bankruptcy Code") in the bankruptcy court. On March 17, 2008, upon motion by the Chapter 13 Trustee, the Chapter 13 petition was dismissed.

On or about May 19, 2008 ("the petition date"), the debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code ("the Bankruptcy Code") in the bankruptcy court. The debtor did not identify appellant as a creditor in his petition and schedules. On or about June 26, 2008, debtor's Chapter 13 proceeding was voluntarily converted to a proceeding under Chapter 11 of the Bankruptcy Code based upon the debtor's ineligibility to be a Chapter 13 debtor pursuant to Section 109(e) of the Bankruptcy Code.

On or about July 7, 2008, the debtor repaid appellant seventy-two thousand dollars ($72,000.00) on the pre-petition loan appellant had made to the debtor, without seeking or obtaining the approval of the bankruptcy court.

On or about October 8, 2008, the debtor sold his interest in Alnic Restaurant Group ("Alnic") for one hundred forty thousand dollars ($140,000.00) without seeking or obtaining the approval of the bankruptcy court.

On December 10, 2008 ("the Chapter 7 conversion date"), the debtor's Chapter 11 proceeding was converted to a proceeding under Chapter 7 of the Bankruptcy Code pursuant to

Section 1112(b) of the Bankruptcy Code and the Trustee was appointed.

On or about July 9, 2009, the Trustee commenced an adversary proceeding against the debtor in the bankruptcy court, which was assigned adversary proceeding no. 8-09-08282-reg, seeking to deny the debtor a discharge.

On July 31, 2009, the Trustee commenced an adversary proceeding against appellant and another individual, Hope Pagano ("Pagano"), in the bankruptcy court, which was assigned adversary proceeding no. 8-09-08311-reg., seeking to avoid the post-petition transfers of money that the debtor had made to appellant and Pagano pursuant to 11 U.S.C. § 549(a), and to recover the money pursuant to 11 U.S.C. § 550(a) for the benefit of the debtor's estate, plus interest thereon from October 1, 2008. In the complaint, the Trustee alleged that "[t]he Debtor testified [during the Trustee's examination of the debtor during the initial meeting of the creditors pursuant to 11 U.S.C. § 341] that he used the Alnic Proceeds to pay personal pre-petition loans * * * made to him by [appellant] * * *, in the total sum of $70,000.00 * * *." The Trustee further alleged, *inter alia*, that the debtor's interest in Alnic and the proceeds he received from the sale of Alnic were property of the Chapter 7 estate pursuant to 11 U.S.C. § 541, insofar as the payments were made subsequent to the petition date and within one (1) year prior to the Chapter 7 conversion date. Appellant contends that notwithstanding the Trustee's allegations in the complaint, the debtor's counsel had provided the Trustee with a copy of the Alnic Sale Agreement, dated October 8, 2008, no later than March 5, 2009, prior to the commencement of the adversary proceeding against him. The cover letter from the debtor's counsel to the Trustee indicated, *inter alia*, that "upon the sale of Alnic, the money was repaid to [appellant] * * *."

Appellant contends that after the commencement of the adversary proceeding, he offered to settle the matter for fifty thousand dollars ($50,000.00), in monthly installments of two thousand five hundred dollars ($2,500.00) from his disability pension with the Veterans Administration, because he believed that the Trustee's allegations in the complaint were true. On September 22, 2009, appellant entered into a stipulation of settlement with the Trustee ("the settlement agreement"), pursuant to which: (1) appellant was to pay to the Trustee the total sum of fifty thousand dollars ($50,000.00), with an initial payment of ten thousand dollars ($10,000.00) upon the execution of the settlement, followed by sixteen (16) monthly payments of two thousand five hundred dollars ($2,500.00) after the stipulation was approved by the bankruptcy court; (2) the debtor's "affiliate," Tolkin Foods, Inc. ("Tolkin Foods")[1], was to make monthly payments in the sum of five thousand dollars ($5,000.00) to the Trustee, which the Trustee would immediately pay to the New York State Department of Taxation and Finance ("NYSDTF") for payment of its tax claim[2]; and (3) in the event of a default in payment by either appellant or Tolkin Foods, the Trustee could enter judgment against appellant in the sum of seventy-two thousand dollars ($72,000.00), i.e., the amount appellant had received from the debtor, less any payments made by appellant. The stipulation did not expressly provide for the payment of any interest upon a default.

On December 18, 2009, the Trustee filed motions to compromise pursuant to Rule 9019

---

[1] On his Schedule B, the debtor disclosed that he was president and eighty percent (80%) shareholder of Tolkin Foods, although he testified at trial that he owned one hundred percent (100%) of the shares of that corporation.

[2] Pursuant to the settlement in the adversary proceeding against the debtor, the debtor agreed, *inter alia*, to fully satisfy the tax obligation owed to the NYSDTF.

4

of the Federal Rules of Bankruptcy Procedure in the two (2) adversary proceedings, seeking the bankruptcy court's approval of the settlement of the adversary proceedings. By orders entered April 16, 2010, following a hearing on April 14, 2010, the bankruptcy court granted the Trustee's motions to compromise and approved the settlement of the adversary proceedings. In accordance with that order, the adversary proceeding against appellant was closed on April 19, 2010.

It is undisputed that Tolkin Foods immediately defaulted on its obligation to make the five thousand dollar ($5,000.00) monthly payments, due on March 15, 2010, April 15, 2010 and May 15, 2010, to the Trustee. Appellant contends, however, that he never defaulted on his obligations under the settlement.[3] On or about April 15, 2010, the Trustee provided the debtor and appellant's "pro bono legal advisor" with notice of the default advising them that in the event the default was not cured within ten (10) days, the Trustee would pursue all of the remedies as set forth in the settlement agreement, which appellant concedes his legal advisor forwarded to him. Accordingly, appellant had actual notice of the default of the settlement agreement by Tolkin Foods, that the Trustee intended to pursue all remedies available to him under the parties' settlement agreement and, therefore, that judgment could be entered against him as a result of the default pursuant to the terms of the settlement agreement. Nonetheless, the default was never cured.

---

[3] In its Memorandum Decision entered, following trial, with respect to the Trustee's claims against Pagano in the adversary proceeding, the bankruptcy court erroneously indicated that it was appellant, as opposed to the debtor, who had defaulted in his obligations under the settlement agreement. See Pergament v. Pagano, Adv. Pro. No. 809-8311-reg, at p. 4 (Bankr. E.D.N.Y. Apr. 5, 2011). Such error, however, does not affect the settlement agreement and judgment entered against appellant in the proceeding.

On May 26, 2010, the Trustee filed a notice of settlement of order in the bankruptcy court, seeking the entry of judgment against appellant as contemplated by the settlement agreement. An affidavit of service indicates that the notice of settlement, proposed order and proposed judgment had been served on appellant's legal advisor on May 26, 2010. Rather than sign the proposed order and judgment, the bankruptcy court directed the Trustee to file a motion on notice to the parties.

On or about June 11, 2010, the Trustee moved to reopen the adversary proceeding against appellant and, upon re-opening, for the entry of a default judgment against appellant in the sum of seventy-two thousand dollars ($72,000.00), plus interest from March 1, 2009 in the sum of eight thousand one hundred dollars ($8,100.00), less the sum of twenty-two thousand five hundred dollars ($22,500.00), representing money previously paid by appellant to the Trustee. Appellant contends that he never received notice of the Trustee's motion and that he "doubt[s] that [his legal advisor] was ever served with it either as she always sends [sic] [him] anything she received." However, an affidavit of service indicates that the motion, proposed order and proposed judgment had been served upon appellant's legal advisor on June 11, 2010.

By order dated July 19, 2010, following a hearing on July 14, 2010, the bankruptcy court, *inter alia*, granted the Trustee's motion to reopen the adversary proceeding against appellant and granted the Trustee a default judgment against appellant in the sum of fifty-seven thousand six hundred dollars ($57,600.00), i.e, the accelerated amount of seventy-two thousand dollars ($72,000.00) plus interest from March 1, 2009 in the sum of eight thousand one hundred dollars ($8,100.00), less the twenty-two thousand five hundred dollars ($22,500.00) appellant had paid

to the Trustee as of the date the order was signed. On August 2, 2010, judgment was entered against appellant in accordance with the July 19, 2010 order.

Appellant contends that he was not aware of the July 19, 2010 order or the judgment until February 1, 2011, at which time his legal advisor contacted the Trustee to challenge the imposition of interest and the rate of interest imposed. However, by e-mail dated January 31, 2011, appellant's legal advisor admitted that she had received notice of settlement of the proposed order and judgment, to which she could have objected prior to their entry. In any event, appellant never filed a notice of appeal of the judgment, nor sought an extension of time to do so.

During his deposition by the Trustee on November 22, 2010, more than seven (7) months after the bankruptcy court had approved appellant's settlement agreement with the Trustee and more than three (3) months after the default judgment had been entered against appellant in the adversary proceeding, the debtor testified that a bank statement from a personal bank account, which he held in trust for his children, showed that on October 8, 2008, he had deposited one hundred thirty-seven thousand five hundred dollars ($137,500.00), which was the money that he had received from the Alnic sale, into that account. The debtor further testified that from the money deposited, he paid appellant the seventy-thousand dollars ($70,000.00) that he owed him; rent to the landlord of a restaurant in which he had an interest; the note holder from whom he had purchased that restaurant; other vendors in an attempt to keep that restaurant operating; a mortgage on his house; and a credit card debt. However, the debtor also testified that he did not know if the money he had repaid appellant came directly from the proceeds of the Alnic sale or if it came from some money that he had "borrowed in advance credit card funds" from Tolkin

7

Foods.

By Memorandum Decision dated April 5, 2011, the bankruptcy court found, *inter alia*, following trial, that the Trustee could not recover funds transferred by the debtor to Pagano on July 22, 2008 under Section 549(a) of the Bankruptcy Code because the Trustee had failed to establish that those funds were property of the debtor's estate at the time of the transfer. Pergament v. Pagano, Adv. Pro. No. 809-8311-reg, at pp. 17-19 (Bankr. E.D.N.Y. Apr. 5, 2011). As is relevant here, the bankruptcy court held, *inter alia*: (1) that "the record is barren as to the actual source of the [funds] transfer;" (2) that "even if the funds were taken from Tolkin Foods, Inc. and transferred directly to [Pagano], the funds do not constitute property of the Debtor's estate because Tolkin Foods, Inc. is a separate legal entity;" (3) that "[p]roperty of a corporation, in this case the funds in the bank account held by Tolkin Foods, Inc., belongs to the corporation, not the debtor/shareholder, even if the debtor owns 100% of the stock;" (4) that "if the Debtor orchestrated the transfer of funds belonging to Tolkin Foods, Inc., to one of the Debtor's creditors, it does not follow that the transferred funds constitute property of the Debtor's estate," particularly since the Trustee had "failed to introduce bank records showing that th[o]se funds were ever in the Debtor's personal bank account;" and (5) that "the funds were not generated from the Debtor's earnings and the Trustee ha[d] not proven that property held by Tolkin Foods, Inc. is the Debtor's property under the theory of alter ego or under any other theory * * * [since] the record is devoid of any information regarding the debtor's relationship to Tolkin Foods, Inc." Id.

On May 13, 2011, appellant moved: (a) to set aside the settlement agreement as void *ab*

*initio*; (b) for an order directing the Trustee to return all funds that appellant had paid to him under the settlement agreement; and (c) to summarily dismiss the adversary proceeding against appellant. In his motion, appellant contended, *inter alia*, that the Trustee's allegation in the adversary proceeding that the debtor had paid him back a loan of seventy thousand dollars ($70,000.00) from the funds he had received from the sale of his interest in Alnic Restaurant Group was incorrect because he had learned "in the last few months" that the Alnic sale occurred on October 8, 2008, but the debtor had repaid appellant's loan three months prior to that sale, i.e., on July 7, 2008. According to appellant, he never would have settled the adversary proceeding had he known the correct facts. The appellant further contended that the Trustee had been provided a copy of the Alnic sale document on March 5, 2009, prior to his commencement of the adversary proceeding against appellant in July 2009, and had been provided a copy of appellant's bank statement reflecting the date that the debtor's loan had been repaid within one (1) month after the commencement of the adversary proceeding and, therefore, he should have discontinued the adversary proceeding.

The Trustee filed an objection to appellant's motion on June 2, 2011, contending that relief under Rule 60(b) is not warranted because, *inter alia:* (1) the motion is untimely, having been made more than one (1) year after the bankruptcy court had approved the settlement agreement on April 16, 2010; (2) he did not compel appellant to settle the adversary proceeding and, indeed, it was appellant who wanted to settle the proceeding without litigation; (3) appellant was free to conduct discovery and inquire as to the viability of the Trustee's legal theories and, indeed, all of the information was within the control of either appellant or his son; and (4)

9

appellant had been assisted by experienced legal counsel during the proceeding.

By order entered June 13, 2011, following a hearing held on June 6, 2011, the bankruptcy court denied appellant's motion. On June 16, 2011, appellant filed in the bankruptcy court a notice of appeal to this Court of the June 13, 2011 order, which was transmitted to this Court on July 19, 2011. The appeal was fully briefed as of October 5, 2011.

III. Discussion

Appellant seeks, *inter alia*: (1) to have the stipulation of settlement marked "as void ab initio due to the fraud which was committed by the * * * Trustee * * * on the Court" regarding the source of the funds the debtor used to repay him on the pre-petition loan; (2) to have the sixty thousand dollars ($60,000.00) that he has paid to the Trustee to date pursuant to the stipulation of settlement returned to him; (3) to vacate so much of the bankruptcy's court's finding in the memorandum decision dated April 5, 2011 that he had defaulted on his obligations under the settlement agreement; (4) to have the adversary proceeding against him dismissed; and (5) to have "the interest awarded to the trustee [] set aside as [he] was not given due process in being notified of this proceeding." According to appellant, "the trustee had a fiduciary and moral obligation to notify the [bankruptcy] court from the beginning that the allegations in the adversary proceeding against [him] were incorrect," i.e., that the debtor had repaid appellant on his pre-petition loan three months prior to the Alnic sale.

A.  Standard of Review

On an appeal from a bankruptcy court order, a district court must review findings of fact under a "clearly erroneous" standard. Fed. R. Bankr. P. 8013; see In re PCH Associates, 949 F.2d 585, 597 (2d Cir. 1991). Issues of law, on the other hand, are reviewed *de novo*. See In re Vouzianas, 259 F.3d 103, 107 (2d Cir. 2001). Rule 8013 of the Federal Rules of Bankruptcy Procedure provides, in relevant part, that "[o]n an appeal, the district court * * * may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." See In re Bayou Group, LLC, 439 B.R. 284, 296 (S.D.N.Y. 2010); In re Moreo, 437 B.R. 40, 50 (E.D.N.Y. 2010).

B.  Rule 60

With exceptions not relevant here, Rule 9024 of the Federal Rules of Bankruptcy Procedure makes Rule 60(b) of the Federal Rules of Civil Procedure applicable to cases under the Bankruptcy Code. See, e.g. In re FairPoint Communications, Inc., 462 B. R. 75, 79 (Bankr. S.D.N.Y. 2012); In re Northwest Airlines Corp., 366 B.R. 270, 273 (Bankr. S.D.N.Y. 2007).

Rule 60(b) provides, in relevant part, that:

> "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud * * *, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."

11

"In extraordinary circumstances, Rule 60(b) may be invoked to override the finality of judgments in the interests of justice." Andrulonis v. United States, 26 F.3d 1224, 1235 (2d Cir. 1994); see also United States v. Bank of New York, 14 F.3d 756, 759 (2d Cir. 1994) (holding that relief under Rule 60(b) "may be granted only in extraordinary circumstances." (quotations and citation omitted); Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986) (holding that Rule 60(b) is "invoked only upon a showing of exceptional circumstances.") "However, the Rule does not allow district courts to 'indulge a party's discontent over the effects of its bargain.'" Andrulonis, 26 F.3d at 1235 (quoting Kozlowski v. Coughlin, 871 F.2d 241, 246 (2d Cir. 1989)); see also United Airlines, Inc. v. Brien, 588 F.3d 158, 176 (2d Cir. 2009) ("Rule 60 does not allow district courts to indulge a party's discontent over the effects of its bargain, such as where the party has made a deliberate, strategic choice to settle." (quotations and citation omitted)). "Accordingly, when a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." Andrulonis, 26 F.3d at 1235 (quotations, alterations and citation omitted); see also Bank of New York, 14 F.3d at 759 (accord). "Rule 60(b) relief is designed to afford parties an opportunity to resolve a dispute on its merits. * * * When the parties submit to an agreed-upon disposition instead of seeking a resolution on the merits, however, the burden to obtain Rule 60(b) relief is heavier than if one party proceeded to trial, lost, and failed to appeal." Nemaizer, 793 F.2d at 63. "Thus, a party attacking a settlement agreement bears the burden of proving its invalidity and unenforceability, either by fraud practiced upon him or by a mutual mistake under which both parties acted." In re AMC Realty Corp., 270 B.R. 132, 144 (Bankr. S.D.N.Y. 2001) (quotations

and citation omitted).

Nor may a Rule 60 motion be used as "a substitute for appeal." United Airlines, 588 F.3d at 176 (quoting Matarese, 801 F.2d at 1235); see also Nemaizer, 793 F.2d at 61 (holding that Rule 60(b) "may not be used as a substitute for a timely appeal.")

"[A]n appeal from an order denying a Rule 60(b) motion brings up for review only the denial of the motion and not the merits of the underlying judgment for errors that could have been asserted on direct appeal." Lora v. O'Heaney, 602 F.3d 106, 111 (2d Cir. 2010) (quotations and citations omitted); see also S.E.C. v. McNulty, 137 F.3d 732, 741 (2d Cir. 1998) (accord). Thus, to the extent appellant challenges errors in the judgment entered against him in the adversary proceeding, e.g., the imposition of interest and the rate at which such interest was imposed, the merits of such contentions are beyond the scope of this Court's review since appellant did not appeal the final judgment within the fourteen (14) day period prescribed by Rule 8002(a) of the Federal Rules of Bankruptcy Procedure, nor did he seek an extension of time to do so in accordance with Rule 8002(c) of the Federal Rules of Bankruptcy Procedure.

Thus, the only cognizable grounds upon which appellant challenges the settlement agreement and judgment are: (1) that the Trustee committed fraud against him and the bankruptcy court, which is reviewable under Rule 60(b)(3); and (2) that his due process rights were violated by the Trustee's failure to properly serve him with the motion to reopen the adversary proceeding and to enter a default judgment against him, which may be reviewable under Rule 60(b)(4).

13

### 1. Rule 60(b)(3)

"Rule 60(b)(3) specifically allows a court to relieve a party from a final judgment for 'fraud * * *, misrepresentation, or other misconduct of an adverse party,' as long as the motion is 'made * * * not more than one year after the judgment, order, or proceeding was entered or taken." Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A., 117 F.3d 655, 662 (2d Cir. 1997) (quoting Rule 60(b)). "To prevail on a Rule 60(b)(3) motion, a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting his case." State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 176 (2d Cir. 2004) (quotations and citations omitted). When the movant already possessed the information supposedly concealed by his adversary, or, with due diligence, could have discovered that information independently, he "cannot prevail as a matter of law on a Rule 60(b)(3) motion predicated on fraud * * *." Id.

Since appellant only challenges the stipulation of settlement, as opposed to the default judgment entered against him, on the basis of fraud, his motion for relief pursuant to Rule 60(b)(3) is untimely since it was made more than one (1) year after the bankruptcy court had approved the settlement agreement by order entered April 16, 2010. See Fed. R. Civ. Pro. 60(c)(1). To the extent appellant seeks to evade the one (1) year time period by claiming that the Trustee committed a fraud on the court pursuant to Rule 60(d)(3), that provision provides, in pertinent part, that Rule 60 "does not limit a court's power to: * * * (3) set aside *a judgment* for fraud on the court." Although appellant challenges the default judgment on the basis that it was entered in violation of his due process rights, he does not allege that the default judgment itself

14

was obtained through fraud on the bankruptcy court. In any event, the record is devoid of any evidence, other than appellant's conclusory assertions and speculation, suggesting that the Trustee committed a fraud upon either the bankruptcy court or appellant.

Moreover, appellant has offered no explanation for why he could not, with due diligence, have discovered the actual dates: (1) of the Alnic sale by his son, the debtor, and (2) that his son repaid him the pre-petition loan amount, which information was readily available to him from his own bank account statement, at any time prior to his settlement with the Trustee. In light of, *inter alia*, the debtor's evasiveness throughout the bankruptcy proceedings regarding the source of the funds he used to repay appellant on the pre-petition loan, the lack of any evidence supporting an inference that the Trustee committed fraud and the fact that the information regarding the dates of the Alnic sale and the debtor's repayment of the loan to appellant could have been discovered by appellant independently prior to his settlement with the Trustee, relief under Rule 60(b)(3) is not available to appellant. Accordingly, the bankruptcy court properly denied appellant's motion.

2.  Rule 60(b)(4)

To the extent appellant is attacking the judgment as void under Rule 60(b)(4), the Supreme Court has held:

> "A judgment is not void . . . simply because it is or may have been erroneous. * * * [A] motion under Rule 60(b)(4) is not a substitute for a timely appeal. * * * Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."

United Student Aid Funds, Inc. v. Espinosa, — U.S. —, 130 S. Ct. 1367, 1377, 176 L. Ed. 2d 158 (2010); see also City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 138 (2d Cir. 2011) ("A judgment is void under Rule 60(b)(4) of the Federal Rules of Civil Procedure . . . if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." (quoting Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 193 (2d Cir. 2006)).

Initially, appellant does not challenge the bankruptcy court's jurisdiction to enter the judgment against him in the adversary proceeding. Moreover, appellant cannot challenge the stipulation of settlement as void under Rule 60(b)(4) because, *inter alia*, it is not the final judgment in the adversary proceeding against him.

To the extent appellant challenges the bankruptcy court's imposition of interest in the final judgment, at most, such an infirmity would constitute a mere error in the judgment correctable on appeal and for which relief under Rule 60(b)(4) is not available.

To the extent appellant challenges the default judgment entered against him on due process grounds, i.e., that he was not properly served with the Trustee's motion to re-open the adversary proceeding and for the entry of a default judgment against him, the record indicates, *inter alia*: (1) that appellant's legal advisor had, in fact, been served with both the notice of Tolkin Foods's default and with the notice of motion and settlement of the proposed order and judgment, but failed to object thereto; (2) that appellant had actual notice (a) of Tolkin Foods's default, (b) that the Trustee intended to pursue all remedies available to him under the settlement agreement if the default was not cured and (c) that the settlement agreement allowed for the entry

of a default judgment against appellant in the event of a default by Tolkin Foods, but appellant failed to promptly inquire with the Trustee or bankruptcy court regarding whether Tolkin Foods ever cured its default or whether the Trustee ever sought the available remedies under the settlement agreement; and (3) that appellant himself knew of the default judgment entered against him in the adversary proceeding no later than February 1, 2011, but he did not object thereto or seek any relief therefrom for over three (3) months, i.e., on May 13, 2011, and only after Pagano had successfully challenged the Trustee's attempt to recover a similar transfer the debtor had made to her at trial. Accordingly, there was no violation of appellant's due process rights sufficient to warrant a finding that the default judgment against him was void within the meaning of Rule 60(b)(4).

Since, *inter alia*, there was no violation of appellant's due process rights and appellant never timely objected to, or appealed from, the default judgment entered against him in the adversary proceeding, he cannot now challenge the final judgment against him as void under Rule 60(b)(4). See, e.g. United Student Aid Funds, Inc., — U.S. —, 130 S. Ct. at 1378-80. Accordingly, the bankruptcy court properly denied appellant's motion.

3. Rule 60(b)(6)

Since appellant is proceeding *pro se*, I have also considered whether relief would be available to him under the catchall provision of Rule 60(b)(6). "Rule 60(b)(6) 'confers broad discretion on the trial court to grant relief when appropriate to accomplish justice.'" United Airlines, Inc. v. Brien, 588 F.3d 158, 176 (2d Cir. 2009) (quoting Matarese v. LeFevre, 801 F.2d

17

98, 106 (2d Cir. 1986)). "Relief is warranted 'where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship, and should be liberally construed when substantial justice will thus be served.'" Id. (quoting Matarese, 801 F.3d at 106). Moreover, relief is only available under Rule 60(b)(6) "when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule." Nemaizer, 793 F.2d at 63; see also In re AL & LP Realty Co., 164 B.R. 231, 233 (Bankr. S.D.N.Y. 1994) ("Rule 60(b)(6) is a catchall provision which is properly invoked only when the asserted ground for relief is not recognized in Rules 60(b)(1)-(5).")

"A settlement agreement is a contract that is interpreted according to general principles of contract law." Powell v. Omnicom, BBDO/PHD, 497 F.3d 124, 128 (2d Cir. 2007). "Once entered into, the contract is binding and conclusive." Id. "When a party makes a deliberate, strategic choice to settle, a count cannot relieve him of that [] choice simply because his assessment of the consequences was incorrect." Id. "A failure to properly estimate the loss or gain from entering a settlement agreement is not an extraordinary circumstance that justifies relief under Rule 60(b)(6)." Bank of New York, 14 F.3d at 760. "The broad power granted by Rule 60(b)(6) is not for the purpose of relieving a party from free, calculated and deliberate choices he has made." AL & LP Realty Co., 164 B.R. 231, 234 (Bankr. S.D.N.Y. 1994) (quotations, alterations and citation omitted). "Holding the Debtor to the deal it struck is neither extraordinary nor an 'extreme' or 'undue' hardship." In re AMC Realty Corp., 270 B.R. 132, 144 (Bankr. S.D.N.Y. 2001).

Appellant did not challenge either the settlement agreement or the default judgment

18

against him until the bankruptcy court entered its memorandum decision following the trial of the Trustee's claims against Pagano, from which it appears that appellant might have successfully challenged the Trustee's claims against him had appellant litigated those claims instead of settling them. However, appellant may not evade his contractual obligations under the settlement agreement merely because the bankruptcy court might have ruled in his favor had he opted to litigate the adversary proceeding instead of settling. Appellant voluntarily, and with the advice of counsel, contracted to settle the adversary proceeding rather than litigate the merits at trial, thereby avoiding the potential risks and burdens of litigation. Since appellant made "a conscious and informed choice of litigation strategy [he] cannot in hindsight seek extraordinary relief." Bank of New York, 14 F.3d at 759.

Since appellant's "hindsight assessment of [his] bargain is not a permissible ground for Rule 60(b) relief," Andrulonis, 26 F.3d at 1235, the bankruptcy court properly denied his motion to set aside the stipulation of settlement and resulting judgment against him in the adversary proceeding.

IV. CONCLUSION

For the reasons stated above, the June 13, 2011 order of the bankruptcy court is affirmed.

**SO ORDERED.**                                s/ Sandra J. Feuerstein

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: March 31, 2012
       Central Islip, New York